***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Dollar, along with the briefs and arguments on appeal. The appealing party has shown good ground to amend the prior Opinion and Award. Accordingly, the Full Commission REVERSES the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The undersigned finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The defendant was a duly qualified self-insured, with Sedgwick CMS acting as its servicing agent.
3. The employee-employer relationship existed between the parties at all relevant times.
4. August 24, 2000 is the date of the alleged injury by accident.
5. The plaintiff's average weekly wage was $528.33, which yields a compensation rate of $352.24 per week, based upon the Form 22.
6. The issue for determination is whether the plaintiff sustained an injury by accident arising out of and in the course of his employment on or about August 24, 2000, and if so, to what benefits may he be entitled under the Act?
7. The parties stipulated the following documentary evidence:
a. The plaintiff's Responses to Discovery,
b. I.C. Form 22, and
c. Medical records, 118 pages.
 ***********
Based upon all of the competent evidence in the record, the undersigned makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, the plaintiff was a fifty-six year old male high school graduate. He is right-hand dominant. He had worked for the employer (or its predecessors), a manufacturer of corrugated shipping boxes, for thirty-three years. For the past ten to fifteen years, the plaintiff worked as a tow motor operator, where his duties required him to make full use of arms, lifting 75 to 100 pounds, and operating a tow motor. He had previously operated the gluer machine; the giant folder gluer; the equilox, which folds and glues boxes; and the flexo, which prints, folds, slots and glues boxes.
2. The plaintiff regularly pulled himself up into the tow motor by grasping the handle with his left hand and the steering wheel with his right hand, as he stepped up on the running board.
3. On August 24, 2000, as the plaintiff pulled himself up into his tow motor, his foot slipped off the running board and hung momentarily with all of his weight suspended from his left arm.
4. When this happened, the plaintiff felt a burning pain in the rear of his left shoulder running up into the back of his neck. The pain was initially sharp and continued to increase during the day. The plaintiff thought he had pulled a muscle and continued to operate his tow motor the remainder of the day. On the day of the incident, the plaintiff told Joe Keeney, a plant supervisor, that he had hurt his shoulder and wanted to take a vacation day on the next day, Friday. The plaintiff took vacation leave, which was approved by Joe Keeney, on Friday, August 25, 2000.
5. On Saturday, August 26, 2000, the plaintiff's pain had become so intense that he went to the emergency room at Rowan Regional Medical Center. Hospital records indicate that the plaintiff reported the onset of pain as he pulled himself into his tow motor. The plaintiff was diagnosed with acute thoracic strain, given a Kenalog shot, and told to take pain medication. The plaintiff continued to suffer extreme pain and returned to the emergency room on August 27 and 28. The plaintiff's medication was changed each time he returned.
6. The plaintiff talked to Jerry Alderman, the plant production manager, when the plaintiff returned to work on the Monday following the incident. Mr. Alderman testified that the plaintiff related to him that the plaintiff was hurt pulling himself up into the tow motor. Mr. Alderman further testified that once the plaintiff's claim was denied, no light duty work was available to the plaintiff.
7. The plaintiff talked to Doris Sides, defendant-employer's plant secretary. Ms. Sides told the plaintiff to go to the company Doctor at a facility called "RoMed." The plaintiff saw a Dr. Kim Lykins at Romed. The plaintiff gave Dr. Lykins the identical history he had given at the emergency room, that he had hurt himself as he pulled himself up into his tow motor at work. Dr. Lykins diagnosed the plaintiff with a strained left shoulder, but also noticed some muscle atrophy in the shoulder and referred the plaintiff to Dr. Boyd Watts, an orthopedic surgeon.
8. The plaintiff continued to receive treatment from Dr. Lykins. After an arthrogram, x-rays and nerve conduction studies were completed, Dr. Lykins advised the carrier that the plaintiff had a left brachial plexopathy, and requested an MRI.
9. After this claim was denied, the plaintiff sought treatment from Dr. William Stephen Furr. Dr. Furr noticed severe muscle wasting and stated that the plaintiff would need an exploration and possible surgical repair of the brachial plexus. Dr. Furr therefore referred the plaintiff to a neurosurgeon, Dr. Kevin Zitnay.
10. Dr. Zitnay's records reflect that the plaintiff "was reaching up and had grasped the forklift and lost his footing and fell. He caught himself with his left arm, which was extended above his head and had an immediate onset of pain in the left shoulder and weakness in the left arm." Dr. Zitnay diagnosed the plaintiff with "a brachial plexus traction injury sustained at work." Dr. Zitnay referred the plaintiff to a surgeon at Duke experienced in handling bracial plexus repairs.
11. The Duke surgeon never saw the plaintiff because of problems with the plaintiff's health insurance.
12. Plaintiff has since been unable to see a doctor to treat his damaged brachial plexus. The plaintiff is unable to lift his arm. The plaintiff has been out of work since 24 August 2000.
13. On 24 August 2000, the plaintiff sustained a conpensable injury by accident arising out of and in the course of his employment with defendant-employer when he slipped while climbing into his tow-motor and briefly hung with all his weight on his left arm.
14. As a result of his compensable injury of 24 August 2000, the plaintiff has been incapable of earning wages with defendant-employer or in any other employment from 24 August 2000 and continuing.
15. The plaintiff may require a future surgical procedure to repair his shoulder.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 24 August 2000, the plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C.G.S. § 97-2(6).
2. As a result of his compensable injury on 24 August 2000, the plaintiff is entitled to temporary total disability compensation at a rate of $352.24 per week beginning 24 August 2000 and continuing until the plaintiff returns to work or further order of the Industrial Commission. N.C.G.S. § 97-29.
3. The plaintiff is entitled to have defendants pay all past and future medical expenses incurred or to be incurred by the plaintiff as result of his compensable injury of 24 August 2000, including but not limited to the future medical expenses of a potential surgery. N.C.G.S. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For his temporary total disability, defendants shall pay temporary total disability compensation to the plaintiff at the rate of $352.24 per week, from 24 August 2000 and continuing until further order of the Commission. Amounts that have accrued shall be paid to the plaintiff in a lump sum, subject to the attorney fee approved in paragraph 3.
2. Defendants shall pay all past and future medical expenses incurred or to be incurred by the plaintiff as a result of his compensable injury of 24 August 2000.
3. A reasonable attorney fee of twenty-five percent of the compensation due the plaintiff under paragraph one of this AWARD is approved for the plaintiff's counsel and shall be paid as follows: twenty-five percent of the lump sum due the plaintiff shall be deducted from that sum and paid directly to the plaintiff's counsel. Thereafter, every fourth compensation check shall be deducted from the sum due the plaintiff and paid directly to the plaintiff's counsel. Consideration and designation of this attorney's fee contemplates that counsel for the plaintiff shall continue and is ORDERED to monitor the plaintiff's medical condition and submit future medical expenses (including but not limited to those related to a potential future surgery) to defendants.
4. Defendant shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/____________________ THOMAS JEFFERSON BOLCH COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER